**The below described is SIGNED.**

**Dated: August 01, 2008**

_____
**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**



_____

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>**Ruben G. Espinoza**<br>**Crista L. Espinoza,**<br><br>Debtors. | Bankruptcy Number:  08-20778<br><br>Chapter 13 |

## MEMORANDUM DECISION

The matter before the Court is CitiFinancial Auto Corporation's ("CitiFinancial") objection to Ruben G. Espinoza and Crista L. Espinoza's (the "Debtors") proposed chapter 13 plan (the "Plan").  CitiFinancial objects to the confirmation of the Plan on the ground that it does not comply with 11 U.S.C. § 1325(a)(5)(B)(iii)(I)[1] because it fails to provide for equal monthly payments in an amount sufficient to adequately protect its interests during the term of the Plan.

The Court conducted a hearing on confirmation of the Plan on April 29, 2008.  At the conclusion of that hearing, the Court took this matter under advisement to determine whether the Plan, which defers the start of equal monthly payments beyond confirmation and pays adequate protection payments of lesser amounts in the interim, complies with § 1325(a)(5)(B)(iii)(I).

---

[1]   Unless otherwise noted, all subsequent statutory references are to Title 11 of the United States Code.

After carefully reviewing the parties' briefs and the supporting case law, the Court concludes that the Plan does not comply with chapter 13's equal monthly payment requirement, and confirmation is therefore denied. This Memorandum Decision encompasses the Court's findings of fact and conclusions of law.

## I.     JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B) and (L). Venue is appropriate under 28 U.S.C. § 1408(1).

## II.    BACKGROUND

The Debtors commenced this chapter 13 case on February 13, 2008. The claim of CitiFinancial is fully secured by a lien on the Debtors' 2006 Chrysler Town and Country Van, and is treated as a fully secured claim in the Plan. The Plan, filed on February 18, 2008, proposes that the Debtors make monthly payments of $575 per month to the chapter 13 trustee. From these funds, the Plan proposes to pay CitiFinancial adequate protection payments of $200 per month for 9 months, and equal monthly payments of $510 per month thereafter until the claim is paid in full. This type of a plan is generally known as a "step-up" or a "graduated" payment plan.[2] The Plan also requests for an allowance of attorney's fees in the amount of $2,750 to be paid "from funds available after the distribution provided in paragraphs 3.A-3.C."[3]

CitiFinancial objects to confirmation on the ground that the unequal monthly payments provided for under paragraph 3.B of the Plan are clearly at odds with the equal monthly payment requirement of § 1325(a)(5)(B)(iii)(I). It argues that with the enactment of the Bankruptcy

---

[2]     *In re Erwin*, 376 B.R. 897, 901 (Bankr. C.D. Ill. 2007).

[3]     *See* Debtors' Chapter 13 Plan and Mot. to Value Collateral and to Avoid Liens under 11 U.S.C. § 506 ¶ 4. Paragraph 3 lists all of the secured claims that are to be paid by the Trustee under the Plan, and paragraph 3.B includes the specific claim of CitiFinancial, which is not subject to valuation under § 506.

2

Abuse and Consumer Protection Act ("BAPCPA"), § 1325(a)(5)(B)(iii)(I) now requires that periodic payments made to holders of secured claims under a plan must be in equal monthly amounts from the date of confirmation forward. The Debtors argue that the Plan does not violate § 1325(a)(5)(B)(iii)(I) because it provides equal monthly payments in an amount sufficient to adequately protect CitiFinancial's interest and to fully pay its claim during the term of the Plan.

## III. DISCUSSION

Section 1325 sets forth the requirements for confirmation of a chapter 13 plan. Section 1325(a) provides that the court shall confirm a plan if:

> (5) with respect to each allowed secured claim provided for by he plan–
>   (A) the holder of such claim has accepted the plan;
>   (B)(i) the plan provides that–
>       (I) the holder of such claim retain the lien securing such claim until the earlier of–
>           (aa) the payment of the underlying debt determined under nonbankruptcy law; or
>           (bb) discharge under section 1328; and
>       (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
>   (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
>   (iii) if–
>       (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
>       (II) the hodler of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
>   (C) the debtor surrenders the property securing such claim to such holder.[4]

---

[4]     11 U.S.C. § 1325(a)(5).

Since CitiFinancial has objected to the Plan (§ 1325(a)(5)(A)) and the Debtors are proposing to retain the vehicle (§ 1325(a)(5)(C)), the only subsection at issue is § 1325(a)(5)(B). Within that provision, the only requirement that CitiFinancial argues is not satisfied is the equal monthly payment requirement set forth in subsection (iii),[5] also known to as the equal monthly payment provision.

This Court has previously addressed the equal monthly payment issue in *In re Tonioli*.[6] In that case, the debtor requested an abatement of delinquent payments, which would result in unequal monthly payments to a secured creditor (GMAC).[7] Although GMAC received notice of the debtor's abatement request, it did not object to the resulting unequal monthly payments.[8] Noting the creditor's silence as an implied acceptance of the proposed modification under § 1325(a)(5)(A), the Court allowed the abatement.[9] The Court emphasized, however, that "[i]f GMAC objected to the proposed modification, [it] would be required under §§ 1329(b)(1) and

---

[5] As one court pointed out, this subsection was added by the BAPCPA "as a remedy to pre-BAPCPA practices that harmed secured creditors with depreciating collateral." *In re Rivera*, 2008 WL 1957896, at *3 (N.D. Ind. May 2, 2008).

> Prior to BAPCPA, it was not uncommon for some Chapter 13 plans to provide for backloaded payments, such as balloon payments. Another form of backloading involved graduated or step-up payment plans, where the payments started out smaller and increased over time. Secured creditors, particularly those secured by a vehicle viewed this as unfair, exposing them to undue risk in light of the constant depreciation of their collateral. In response to those creditor concerns, Congress enacted the equal payment provision and a companion provision extending the concept of adequate protection, formerly a preconfirmation requirement, to postconfirmation plan payments. The equal payment provision prevents debtors from backloading payment to secured creditors or paying them other than on a monthly basis.

*Id*. (quoting *In re Erwin*, 376 B.R. at 901). It appears that a similar type of "backloading" might be taking place here because the Debtors propose to pay CitiFinancial a smaller payment for the first 9 months of the Plan and then increase the payment amount in month 10.

[6] 359 B.R. 814 (Bankr. D. Utah 2007).

[7] *In re Tonioli*, 359 B.R. at 816.

[8] *Id*. at 816-17.

[9] *Id*. at 818.

4

1325(a)(5)(B)(iii) to deny the Debtor's Motion to Abate."[10]

Interestingly, both parties cite to *Tonioli* in support of their respective positions, which leads the Court to believe that its ruling in that case requires clarification. Specifically, in the first part of that decision, the Court refered to *In re DeSardi*[11] for the proposition that "[i]f a debtor is . . . proposing to pay the present value of the collateral and proposes to do so through periodic payments, those payments . . . need not commence at a specific time, nor do they need to continue throughout the life of the plan."[12] Relying on this language, the Debtors argue that "this Court has already expressed its approval of the Debtors' position" that step-up payment plans such as theirs satisfy the equal monthly payment requirement.[13] The Debtors have misinterpreted the ruling in *Tonioli* .

As noted previously, the Court in *Tonioli* allowed the abatement that resulted in unequal monthly payments only because the secured creditor had accepted the modified plan under § 1325(a)(5)(A). The Court did not, however, approve the type of treatment proposed by the Debtors in that case. In fact, the Court in *Tonioli* specifically noted that "if a debtor's chapter 13 plan proposes to pay a secured creditor unequal monthly payments, the Court would not confirm the plan over the creditor's objection . . . ."[14] Thus, *Tonioli* is limited to cases where the secured creditor has not objected to the treatment of its claim under the debtor's plan.

Since *Tonioli*, several courts have addressed the issue of equal monthly payments and the

---

[10]    *Id*.

[11]    340 B.R. 790 (Bankr. S.D. Tex. 2006).

[12]    *Id*. at 817 (citing § 1325(a)(5)(B)(iii) and *In re DeSardi*, 340 B.R. at 805-06).

[13]    Debtors' Br. in Supp. of Debtors' Plan ¶¶ 11,12.

[14]    *In re Tonioli*, 359 B.R. at 818 n.12.

5

meaning of § 1325(a)(5)(B)(iii), in the context of graduated or step-up payment plans. The Court recognizes that the issue of equal monthly payments is, by no means, settled, and respects all of the decision that have been rendered. "In the few cases that have been reported, the courts are split as to what the [equal monthly payment] provision means."[15] In each of these cases, secured creditors objected to confirmation because the plans at issue did not provide for post-confirmation periodic payments in equal monthly amounts.[16] Instead, the plans proposed to defer the start of equal monthly payments to some date after confirmation, and to pay a lesser amount in the interim as adequate protection payments.

The courts that side with the Debtors' position hold that there is no requirement that the equal monthly payments on allowed secured claims begin at confirmation.[17] They conclude that pre-confirmation adequate protection payments[18] may continue post-confirmation in one amount, with equal monthly payments replacing them at a higher amount at some later time during the plan.[19] In reaching this conclusion, the court in *DeSardi* drew a distinction between

---

[15]    *In re Rivera*, 2008 WL 1957896, at *4 (quoting *In re Sanchez*, 384 B.R. 574, 577 (Bankr. D. Or. 2008) (internal quotations omitted).

[16]    *Id*. at *1; *In re Sanchez*, 384 B.R. at 575; *In re DeSardi*, 340 B.R. at 796; *In re Hill*, 2007 WL 499622, at *4 (Bankr. M.D.N.C. Feb. 12, 2007); *In re Erwin*, 376 B.R. at 899.

[17]    *In re DeSardi*, 348 B.R. at 802-03 (holding § 1325(a)(5)(B)(iii)(I) means that payments must be equal once they begin, not that such equal monthly payments must begin in month one of the plan.); *In re Hill*, 2007 WL 499622, at *6 (holding that "when the collateral in question is personal property, equal monthly payments need not begin immediately after confirmation."); *In re Chavez*, 2008 WL 624566, at *1 (Bankr. S.D. Tex. 2008) (stating that § 1325(a)(5)(B)(iii)(I) does not require that equal monthly payments begin on the effective date of the plan or that they continue over the life of the plan).

[18]    These are payments that the debtor is required to make to creditors holding an allowed claim secured by personal property pursuant to § 1326(a)(1)(C) and they are generally lower than the equal monthly payments.

[19]    *See, e.g., In re DeSardi*, 340 B.R. at 796 (confirming three chapter 13 plans that proposed to make lower monthly payments to secured creditors for the first few months of the plans, and then increased the payment amount after the debtors' attorneys' fees were paid in full); *In re Hill*, 2007 WL 499622, at *7 (holding that equal monthly payments to a car lender need not begin immediately after confirmation so long as the car lender receives

6

§ 1325(a)(5)(B) (ii) and (iii), noting that while section (ii) requires that the debtors pay the secured claims their "value, as of the effective date of the plan," section (iii) uses less restrictive language and does not impose such a requirement.[20] The *DeSardi* court then contrasted subsections (I) and (II) of § 1325(a)(5)(B)(5)(iii), noting that subsection (II)'s adequate protection requirement is different from subsection (I)'s equal monthly payment requirement. "The Court understands . . . clause (I) to require payments to be equal once they begin, and to continue to be equal until they cease."[21] *DeSardi* also rests largely on its interpretation of § 1326(b)(1), which requires that any unpaid § 507(a)(2) claims be paid before or at the same time as the payments to creditors under the plan.[22] "*DeSardi* interpreted this language to require full payment of attorney's fees . . . before 'equal monthly payments' to secured creditors under subsection (I) may begin."[23]

The court in *In re Hill*,[24] while reaching the same result as *DeSardi*, recognized that subsections (I) and (II) must be read together "[w]hen the collateral in question is 'personal property.'"[25] It specifically noted that "[s]ubsection (II) cannot stand on its own; the reference to

---

adequate protection, and agreeing with *DeSardi* that "the amount of the adequate protection payments do not need to be the same as the equal monthly payments."); *In re Erwin*, 376 B.R. at 902-03 (finding that pro rata payments to secured creditors from the amount available after payment of attorney's fees satisfied the equal monthly payment requirement of § 1325(a)(5)(B)(iii)(I) notwithstanding the fact that payments to secured creditors would not be exactly equal in every month).

[20] *In re DeSardi*, 340 B.R. at 805.

[21] *Id*.

[22] 11 U.S.C. § 1326(b)(1).

[23] *In re Sanchez*, 384 B.R. at 577.

[24] 2007 WL 499622 (Bankr. M.D.N.C. Feb. 12, 2007).

[25] *In re Hill*, 2007 WL 499622, at *6.

7

'such payments' can only be to the 'periodic payments' in subsection (I)."[26] The court, however, "appears to undercut this link" by holding that the phrase "during the period of the plan" in subsection (II) only applies to "adequate protection" not "such [periodic] payments."[27] From this, the court concluded that "the statute simply cannot be read to dictate any specific time for the equal monthly payments to begin."[28] The *Hill* court emphasized that equal monthly payments "need not begin immediately after confirmation."[29] Like *DeSardi*, it based its decision on § 1326(b)(1), noting that if equal monthly payments began immediately after confirmation, then some debtors would not have enough money to pay both their attorney's fees *and* the equal monthly payments.[30] This situation, according to the court, "would result in a violation of section 1326(b)," which requires that debtor's attorney's fees be paid before or concurrently with the payments on secured claims.[31]

In effect, these courts have created a "two-tier post-confirmation payment system" to allow room in chapter 13 plans for payment of debtors' attorney's fees on an expedited basis.[32] The Court agrees with this salutary goal and recognizes the need to provide for payment of debtors' attorney's fees to encourage attorneys to take chapter 13 cases. Although well-

---

[26] *Id.*

[27] *In re Sanchez*, 384 B.R. at 578 (interpreting *In re Hill*, 2007 WL 499622, at *6).

[28] *In re Hill*, 2007 WL 499622, at *6.

[29] *Id.*

[30] *Id.* at *7.

[31] *Id.*

[32] *In re Williams*, 385 B.R. 468, 473-74 (Bankr. S.D. Ga. 2008); *In re Sanchez*, 384 B.R. at 577; *see also In re Erwin,* 376 B.R. at 901 ("[T]he accelerated payment of debtors' attorney fees was not intended to be precluded by the equal payment provision . . . . The debtor's attorney fees, as well as the trustee's fee, accorded a special priority in Chapter 13 cases, must be paid '[b]efore or at the time of each payment to creditors under the plan.' 11 U.S.C. § 1326(b). Payment of the fees on an accelerated basis is expressly authorized.").

reasoned, the Court elects not to follow *DeSardi*'s and *Hill*'s statutory interpretation because they appear to carve out an exception that is not present in § 1325(a)(5)(B)(iii).

Conversely, the courts that side with CitiFinancial's position reject this "two-tier" payment approach, holding that the equal monthly payment provision does not allow the carve-out for the debtors' attorney's fees. These courts draw a distinction between pre-confirmation adequate protection payments under § 1326(a)(1)(C) and post-confirmation equal monthly payments under § 1325(a)(5)(B)(iii)(I).[33] Specifically, *In re Denton*[34] and the cases that follow it, hold that "'periodic payments' under subsection (I) is not a defined term, but rather refers to *all* regularly recurring post-confirmation payments on an allowed secured claim, such that they all must be equal."[35] From this they reason that pre-confirmation adequate protection payments under § 1326(a)(1)(C) cannot be extended beyond the date of confirmation, when the amount of the adequate protection payment is less than the amount of monthly payment on the allowed secured claim under the plan.[36]

These courts then proceed to disqualify the distinction drawn by *DeSardi* between post-confirmation "adequate protection" requirement of § 1325(a)(5)(B)(iii)(II) and the "equal monthly payment" requirement of subsection (I). As explained in *In re Sanchez*, which adopted the rationale of *Denton*:

---

[33] *In re Sanchez*, 384 B.R. at 579 (citing *In re Denton*, 370 B.R. 441, 446 (Bankr. S.D. Ga. 2007)); *see also In re Williams*, 385 B.R. at 476 (adopting the *Denton* analysis).

[34] 370 B.R. 441 (Bankr. S.D. Ga. 2007).

[35] *In re Sanchez*, 384 B.R. at 579 (citing *In re Denton*, 370 B.R. at 445); *In re Williams*, 385 B.R. at 474 (same). In *Denton*, Judge Dalis points out that the courts in *DeSardi*, *Hill*, and *In re Blevins*, 2006 WL 2724153 (Bankr. E.D. Cal. 2006), seem to treat "periodic payments" in § 1325(a)(5)(B)(iii)(I) as a defined term, thereby "creating and artificially distinguishing a counterpart to 'adequate protection payments,'" which has long been understood as a term of art. 370 B.R. at 445.

[36] *In re Denton*, 370 B.R. at 446; *In re Sanchez*, 384 B.R. at 579; *In re Williams*, 385 B.R. at 474.

> Under subsection (I) the periodic payments are "property to be distributed pursuant to *this subsection*." (emphasis added) "This subsection" refers to § 1325(a)(5)(B)(ii) which requires that "the value, as of the effective date of the plan, of *property to be distributed under the plan on account of such claim*," be not less than the allowed amount of the secured claim. (emphasis added). *Denton* recognizes that post-confirmation, adequate protection payments would be "property . . . distributed under the plan on account of the . . . [secured] claim," and not some special breed of payments divorced form the claim. *Denton*'s holding is further buttressed by subsection (II)'s "during the period of the plan" language, which as discussed above, means that equal monthly payments must start with the first payment after confirmation and continue until the secured claim is paid."[37]

This Court is persuaded by the reasoning of *Denton* and *Sanchez*. The language of § 1325(a)(5)(B)(iii) clearly requires that periodic payments to a creditor on an allowed secured claim be in equal monthly amounts and the payment amounts be sufficient to provide adequate protection during the period of the plan. The term "periodic payments" refers to *all* regularly-recurring post-confirmation payments to be made to secured creditors such as CitiFinancial. It follows that, unless CitiFinancial agrees otherwise, it must receive equal monthly payments beginning with the first post-confirmation distribution and continuing until its claim is paid in full.

CitiFinancial, however, is not receiving equal monthly payments under the Plan, and has, therefore, objected to this treatment. The Plan proposes to pay the secured claim of CitiFinancial adequate protection payments of $200 in months 1 through 9, then, beginning in month 10 and continuing until the claim is paid in full, equal monthly payments of $510 per month. In doing so, the Debtors are trying to create room in the Plan for payment to their attorney on an expedited basis. This type of a "two-tiered" payment plan, in which post-confirmation payments characterized as "adequate protection payments" are less than the payments characterized as

---

[37] *In re Sanchez*, 384 B.R. at 579.

"periodic monthly payments," is inconsistent with the requirements of § 1325(a)(5)(B)(iii)(I).

## IV.    CONCLUSION

In light of the foregoing, the Court determines that the Plan does not comply with § 1325(a)(5(B)(iii)'s equal monthly payment requirement.  Confirmation is therefore denied.  A separate order will accompany this Memorandum Decision.

_____END OF DOCUMENT_____

_____ooo0ooo_____

Service of the foregoing **MEMORANDUM DECISION** will be effected through the Bankruptcy Noticing Center to each party listed below.

Lee J. Davis
Tony G. Jones
Law Office of Davis & Jones, P.C.
180 East 2100 South, Suite 102
Salt Lake City, UT 84115
    *Attorneys for the Debtors*

Ruben G. Espinoza and Crista Howard Espinoza
1875 Roundup Circle
Salt Lake City, UT 84116
    *Debtors*

Kim R. Wilson
P. Matthew Cox
Snow, Christensen & Martineau
10 Exchange Place, 11th Floor
P.O. Box 45000
Salt Lake City, UT 84145
    *Attorneys for CitiFinancial Auto Finance*

J. Vincent Cameron
47 West 200 South, Suite 600
Salt Lake City, UT 84101
    *Chapter 13 Trustee*

United States Trustee
Ken Garff Bldg.
405 South Main Street, Suite 300
Salt Lake City, UT 84111